UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
GERARD PAUL ROTTIERS and
AMY VICTORIA ROTTIERS,
     Debtors.                                   No. 13-10-12000 SL

**MEMORANDUM OPINION ON DEBTORS'
MOTION FOR SUMMARY JUDGMENT (doc 68) ON
DEBTORS' OBJECTION TO ALLOWANCE OF PROOF OF
CLAIM #9 FILED BY ROMBAUER VINEYARDS, INC. (doc 47)**

This matter is before the Court on Debtor's Motion for Summary Judgment ("Motion")(doc 68) on their Objection to Allowance of Proof of Claim #9[1] filed by Rombauer Vineyards, Inc. ("Rombauer") (doc 47). Rombauer filed a Response to the claim objection (doc 610), to which Debtors Replied (doc 62). Rombauer also filed a Response to Debtors' Motion for Summary Judgment (doc 78), to which Debtors replied (doc 82).

Debtors appear through their attorney Don Provencio. Rombauer appears through its attorneys Thuma & Walker, A Professional Corporation (David T. Thuma and Stephanie L. Schaeffer). This is a core proceeding concerning both the administration of the estate and allowance or disallowance of claims against the estate. 28 U.S.C. § 157(b)(2)(A) & (B). For the reasons set forth below, the Court will deny the Motion for Summary Judgment.

---

[1] A copy of this claim is also attached to Rombauer's Joinder in Associated Winery Systems, Inc.'s Motion to Dismiss (doc 52).

**THE OBJECTION TO THE PROOF OF CLAIM**

Debtors objection is that the Rombauer claim is a claim against Gerard Consulting, Inc., an entity Mr. Rottiers formed on June 20, 2007 by filing, and the State of California by accepting, articles of incorporation. Debtors argue that all documents attached to the proof of claim demonstrate that the true debtor is Gerard Consulting, Inc.

Rombauer's Response to the claim objection (doc 61) is that it entered into a contract with Gerald Rottiers. The contract was "executed" by Mr. Rottiers, either individually or d/b/a Gerard Rottiers Consulting. The first payment of $434,340 was made to Gerard Rottiers Consulting and was deposited into Mr. Rottiers' individual bank account. Rombauer admits that at some point Mr. Rottiers may have formed a corporation and assigned his payment rights to it, but Rombauer has not released Mr. Rottiers from his personal liability under the contract.

Debtors Reply (doc 62) points out that the contract does not name "Rombauer Vineyards, Inc." as a party, but names "Rombauer Vineyards" which is arguably a different entity. Therefore, Debtors claim that Rombauer is not a creditor in this case.

**SUMMARY JUDGMENT**

On this date the Court also enters a Memorandum Opinion on Rombauer Vineyards, Inc.'s Motion for Summary Judgment on its Motion to Dismiss based on 11 U.S.C. § 109(e) eligibility. In

-2-

that Memorandum Opinion the Court discusses the standards for ruling on a motion for summary judgment. That discussion will not be repeated here but is incorporated by reference.

**FACTS**

Debtors' Motion (doc 68) contains a statement of twenty-six Undisputed Material Facts ("Facts"). Twenty-five of these Facts are identical to the Debtors' [thirty-two] Additional Undisputed Facts in Debtors' Response to Rombauer's Motion for Summary Judgment on its Motion to Dismiss (doc 74). Rombauer's Responses (doc 68) were identical to those it made to the Debtors' [thirty-two] Additional Undisputed Facts (doc 79). The only new proposed fact in Debtors' Motion is Fact 26: "On September 27, 2010, Rombauer Vineyards, Inc. filed its Motion for Summary Judgment on Motion to Dismiss." Rombauer does not dispute this fact. Therefore, the operative facts for this Motion are the following, as set out in the Memorandum Opinion on Rombauer's Motion for Summary Judgment on Motion to Dismiss: 1-3, 6-9, and 12-29 and Fact 26 listed above. For brevity, they are not repeated here.

The Court makes several additional observations. The contract at issue was formed in Sonoma, California. It was entered into by two entities with California addresses. The contract called for performance in California. The contract contains no choice of law provision.

> When a federal court sits in diversity, it
> generally applies the choice-of-law rules of the state

-3-

in which it sits. <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). It does so to avoid intrastate forum-shopping and inconsistent results. <u>Id.</u> at 496, 61 S.Ct. 1020. However, a federal bankruptcy court's jurisdiction does not arise from diversity, but from federal bankruptcy law, which has a goal of national uniformity rather than congruence with state law. Yet state law governs the validity of most property rights, and except when the bankruptcy code specifies otherwise, bankruptcy courts must apply the relevant state law. <u>Butner v. United States</u>, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); <u>In re Wright</u>, 492 F.3d 829, 832 (7th Cir. 2007) ("[S]tate law determines rights and obligations when the [Bankruptcy] Code does not supply a federal rule.").

<u>Jafari v. Wynn Las Vegas, LLC (In re Jafari)</u>, 569 F.3d 644, 648 (7th Cir. 2009), <u>cert. denied</u>, ___ U.S. ___, 130 S.Ct. 1077 (2010).

In <u>Ferrell v. Allstate Ins. Co.</u>, 144 N.M. 405, 421-22, 188 P.3d 1155, 1172-73, 2008 -NMSC- 042, {55} (2008) the New Mexico Supreme Court approved the use of the Restatement (Second) of Conflict of Laws (1971) with respect to contract conflicts.

> If the contract has a valid choice-of-law provision, that law presumptively applies. Restatement (Second) § 187, at 561.
> In the absence of an enforceable choice-of-law provision, and if the rules regarding specific types of contracts or specific issues in contract do not supply the law to be applied, the Restatement (Second) relies on the "most significant relationship" test which is used to determine which state has the most significant relationship to the transaction and to the parties. <u>Id.</u> § 188(1), at 575. A court considers a variety of contacts when making a determination about which state's law applies to the dispute. <u>See id.</u> (listing the following relevant contacts "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e)

-4-

the domicil, residence, nationality, place of
incorporation and place of business of the parties").

Id. at 144 N.M. at 421-22, 188 P.3d at 1172-73, 2008 -NMSC- 042
at {54}-{55}.  Based on the test in the Restatement, the Court
will apply California law.

**CALIFORNIA LAW ON AMBIGUITY**

California abandoned the "four corners" approach to contract
interpretation at least as early as 1968 in <u>Pacific Gas and
Electric Co. v G. W. Thomas Drayage & Rigging Co.</u>, 69 Cal.2d 33,
442 P.2d 641, 69 Cal.Rptr. 561 (1968).  In that case, the trial
court found that a contract had a plain meaning and refused to
admit any exstrinsic evidence that would contradict the court's
interpretation.  Id. at 36, 442 P.2d at 642, 69 Cal.Rptr. at 563.

> When a court interprets a contract on this basis, it
> determines the meaning of the instrument in accordance
> with the '* * * extrinsic evidence of the judge's own
> linguistic education and experience.'  (3 Corbin on
> Contracts (1960 ed.) (1964 Supp. s 579, p. 225, fn.
> 56).)  The exclusion of testimony that might contradict
> the linguistic background of the judge reflects a
> judicial belief in the possibility of perfect verbal
> expression.  (9 Wigmore on Evidence (3d ed. 1940) s
> 2461, p. 187.)  This belief is a remnant of a primitive
> faith in the inherent potency and inherent meaning of
> words.

Id. at 36-37, 442 P.2d at 643-44, 69 Cal.Rptr. at 563-64.
(Footnotes omitted.)  The court continued:

> The test of admissibility of extrinsic evidence to
> explain the meaning of a written instrument is not
> whether it appears to the court to be plain and
> unambiguous on its face, but whether the offered
> evidence is relevant to prove a meaning to which the
> language of the instrument is reasonably susceptible.

-5-

> A rule that would limit the determination of the meaning of a written instrument to its four-corners merely because it seems to the court to be clear and unambiguous, would either deny the relevance of the intention of the parties or presuppose a degree of verbal precision and stability our language has not attained.
>
> Some courts have expressed the opinion that contractual obligations are created by the mere use of certain words, whether or not there was any intention to incur such obligations. Under this view, contractual obligations flow, not from the intention of the parties but from the fact that they used certain magic words. Evidence of the parties' intention therefore becomes irrelevant.

Id. at 37-38, 442 P.2d at 644, 69 Cal.Rptr. at 564. (Footnotes and citations omitted.)

> Accordingly, rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties. Such evidence includes testimony as to the circumstances surrounding the making of the agreement including the object, nature and subject matter of the writing so that the court can place itself in the same situation in which the parties found themselves at the time of contracting. If the court decides, after considering this evidence, that the language of a contract, in the light of all the circumstances, is fairly susceptible of either one of the two interpretations contended for extrinsic evidence relevant to prove either of such meanings is admissible.

Id. at 39-40, 442 P.2d at 645-46, 69 Cal.Rptr. at 565-66. (Footnotes and citations omitted.) Therefore, the California Supreme Court found that the trial court had erred in excluding parol evidence and reversed. Id. at 41, 442 P.2d at 646, 69 Cal.Rptr. at 566.

Since 1968, a host of California and District of California cases have followed the reasoning of Pacific Gas, explaining its meaning and demonstrating its method of application. E.g., Adobe Systems Inc. v. One Stop Micro, Inc., 84 F.Supp.2d 1086, 1090 (N.D. Cal. 2000):

> In interpreting [a contract], the Court must give effect to the mutual intention of the parties. See Waller v. Truck Ins. Exchange, Inc., 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995). The parties' intent is inferred exclusively from the language of the contract, assuming the language is "clear and explicit." See Cal.Civ.Code. § 1638[2]. Under the parol evidence rule the Court is prohibited from considering any extrinsic evidence to vary or add to the terms of a contract. See LaCount v. Hensel Phelps Constr. Co., 79 Cal.App.3d 754, 770, 145 Cal.Rptr. 244 (1978). "However, the exception to the parol evidence rule is broad-extrinsic evidence is admissible to demonstrate that there is an ambiguity in an instrument and for the purpose of construing this ambiguity." Id. Among the extrinsic evidence a court may consider are custom and usage of words in a certain trade. See id.; see also Cal.Civ.Proc.Code § 1856(c) (the terms of a contract "may be explained or supplemented by course of dealing or usage of trade.").

See also Falkowski v. Imation Corp., 132 Cal.App.4th 499, 505-06, 33 Cal.Rptr.3d 724, 729-30 (Ct.App. 2005):

> When faced with a dispute over the meaning of a contractual provision, the court must first determine whether the provision is ambiguous, i.e., whether, on its face, the language of the provision is capable of

---

[2] Note the references to the California statutes. California has also codified the law regarding contract interpretation to supplement the case law. See California Civil Code, Division 3 (Obligations), Title 3 (Interpretation of Contracts) §§ 1635-57 and California Code of Civil Procedure, Part 4 (Miscellaneous Provisions), Title 1 (General Principles of Evidence) §§ 1856-64.

-7-

different, yet reasonable interpretations. (<u>Curry v. Moody</u> (1995) 40 Cal.App.4th 1547, 1552, 48 Cal.Rptr.2d 627; <u>Southern Cal. Edison Co. v. Superior Court</u> (1995) 37 Cal.App.4th 839, 848, 44 Cal.Rptr.2d 227.) If an ambiguity is found, the court must determine which of the plausible meanings the parties actually intended. (Civ.Code, § 1636; <u>Waller v. Truck Ins. Exchange, Inc.</u> (1995) 11 Cal.4th 1, 18, 44 Cal.Rptr.2d 370, 900 P.2d 619; <u>Curry v. Moody</u>, at p. 1552, 48 Cal.Rptr.2d 627.) When the parties offer no extrinsic evidence concerning the meaning of the contractual language, or when the extrinsic evidence offered is not in conflict, ascertaining the intended meaning is solely the duty of the court. (<u>St. Paul Fire & Marine Ins. Co. v. American Dynasty Surplus Lines Ins. Co.</u> (2002) 101 Cal.App.4th 1038, 1048, 124 Cal.Rptr.2d 818; <u>Southern Cal. Edison Co. v. Superior Court</u>, at p. 851, 44 Cal.Rptr.2d 227.)

    In determining which of the plausible meanings was intended, we are required to deduce the parties' intent from the language of the contract alone, if possible. (Civ.Code, § 1639; <u>Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.</u> (2003) 109 Cal.App.4th 944, 955, 135 Cal.Rptr.2d 505.) Accordingly, at least in the first instance, contractual interpretation turns on "what was intended by what was said—not what a party intended to say." (<u>Los Angeles City Employees Union v. City of El Monte</u> (1985) 177 Cal.App.3d 615, 622, 220 Cal.Rptr. 411.) In evaluating the contractual language, however, we also " 'tak[e] into account all the facts, circumstances and conditions surrounding the execution of the contract.' " (<u>Frankel v. Board of Dental Examiners</u> (1996) 46 Cal.App.4th 534, 544, 54 Cal.Rptr.2d 128, quoting <u>Floystrup v. City of Berkeley Rent Stabilization Bd.</u> (1990) 219 Cal.App.3d 1309, 1318, 268 Cal.Rptr. 898.)

<u>and see</u> <u>Dore v. Arnold Worldwide, Inc.</u>, 39 Cal.4th 384, 391, 139 P.3d 56, 60, 46 Cal.Rptr.3d 668, 673 (2006)("As California courts previously have observed, the meaning of language is to be found in its applications. An indeterminacy in the application of language signals its vagueness or ambiguity. An ambiguity arises when language is reasonably susceptible of more than one

-8-

application to material facts.  There cannot be an ambiguity per se, i.e., an ambiguity unrelated to an application.")(Citations and internal punctuation omitted.)  See also Cedars-Sinai Medical Center v. Shewry, 137 Cal.App.4th 964, 979-80, 41 Cal.Rptr.3d 48, 60 (Ct.App. 2006):

> When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is reasonably susceptible to the interpretation urged by the party.  If it is not, the case is over.  If the court decides the language is reasonably susceptible to the interpretation urged, the court moves to the second question: what did the parties intend the language to mean?  Whether the contract is reasonably susceptible to a party's interpretation can be determined from the language of the contract itself or from extrinsic evidence of the parties' intent.  Extrinsic evidence can include the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties.
> California recognizes the objective theory of contracts, under which it is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation.  The parties' undisclosed intent or understanding is irrelevant to contract interpretation.

(Citations and internal punctuation omitted.)

**APPLICATION OF THE LAW**

Debtors argue that based on the extrinsic evidence, the contract at issue is one between Gerard Consulting, Inc. and either Rombauer or an entity "Rombauer Vineyards" (which has not filed a proof of claim).  Rombauer, on the other hand, understandably argues, based on the language of the contract and extrinsic evidence, that the parties are Rombauer Vineyards, Inc.

-9-

and either Gerard Consulting (a d/b/a of Mr. Rottiers) or Mr. Rottiers.

Debtors point out that the Proposal, on top, indicates the parties are Gerard Rottiers Consulting and Rombauer Vineyards, and that neither party is identified as a corporation. They also offer evidence that Mr. Rottier refused to proceed until the corporate papers were finalized and that Rombauer was aware of this from emails and conversations. The signature at the bottom of the proposal is Gerard Rottiers, with no corporate designation. However, the signature is to a statement: "Prepared by." On the other hand, the other signature, by Rombauer is to the statement: "Accepted By." The signatures are ambiguous; are the parties distinguishing Rottiers as mere scrivener of the contract as opposed to being a party? Debtors also argue that the invoice for the first payment was corporate. The first payment was to Gerard Rottier Consulting, but they explain, reasonably, why it was written this way and why it was deposited personally. They also argue that, as a matter of the course of dealing, all subsequent checks were payable to a corporation and deposited in a corporate account. The demand letters were sent to Gerard Consulting, Inc. Isolated portions of deposition testimony also suggests that Rombauer may have been aware that they were dealing with a corporation.

-10-

All of Debtors' evidence suggests that their interpretation of the contract is plausible.

Rombauer submitted an affidavit that states there is no such entity as Rombauer Vineyards, there is only Rombauer Vineyards, Inc.  Rombauer's argument is straightforward: Debtor did not incorporate until after formation of the contract and Rombauer never relieved him of his liability[3].  It also argues that this is demonstrated by the first check, which was to Debtor's d/b/a, and its deposit in his personal account.

All of Rombauer's evidence suggests that its interpretation of the contract is plausible.

Therefore, the Court finds that the contract is ambiguous.  Because this is a motion for summary judgment, the Court must

---

[3]There is also one issue undeveloped in the record and not discussed by the parties.  Debtor's Objection to the Rombauer proof of claim, Exhibit 1 (doc 47, pp. 4-5) shows that Gerard Consulting, Inc.'s articles were filed with the California Secretary of State on June 20, 2007.  The Proposal was dated June 20, 2007 at the top.  Doc 52-1, p.5.  At the bottom it states "Prepared by Gerard Rottiers".  Mr. Rottiers signed it and dated it June 20, 2007.  Doc 52-1, p.11.  The bottom also states "Accepted by Rombauer Vineyards".  There is a substantially illegible signature, but it appears that the last name begins with an "R" and contains an "a" and "u".  However, it is dated July 10, 2007.  (The date might be 20, the writing is difficult to read.)  Then, the first check was written on June 21, 2007 and posted on June 22, 2007.  Doc 52-1, p.15.  If Rombauer accepted in July, then there was an existent corporation.  If Rombauer really accepted on June 20, with an error in the written date, then the exact hour of incorporation may become an issue.  And, if the hour is unknown, there is surely argument to be had on whether that matters and/or what is an incorporator's liability for preformation debts when the creditor does or does not know of the pending incorporation.

-11-

stop its analysis here.  The Court cannot weigh the evidence on a summary judgment motion.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  All the Court can do is find the existence of a disputed material fact.  This contract is ambiguous and the Court finds that, on the evidence on record, there is a genuine issue as to who the parties are.  The Motion for Summary Judgment will be denied.

*[signature]*

Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket:  April 12, 2011

Copies to:

Donald Provencio
1721 Carlisle Blvd NE
Albuquerque, NM 87110-5621

Kelley L. Skehen
625 Silver Avenue SW
Suite 350
Albuquerque, NM 87102-3111

Paul M Fish
PO Box 2168
Albuquerque, NM 87103-2168

Samuel I Roybal
PO Box 1966
Albuquerque, NM 87103-1966

Stephanie L Schaeffer
Thuma & Walker, P.C.
500 Marquette NW Suite 650
Albuquerque, NM 87102

David T Thuma
500 Marquette Ave NW Ste 650
Albuquerque, NM 87102-5309

Office of the United States
Trustee
PO Box 608
Albuquerque, NM 87103-0608